FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 28, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VERNOIC REPPERGER, AMBER LAMAR, CHARRA CALDWELL, REBEKAH CLARK, on their own behalf and on behalf of other similarly situated,<br><br>Plaintiffs,<br><br>    v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.,<br><br>Defendant,<br><br>And<br><br>STATE OF WASHINGTON,<br><br>Intervenor. | No. 2:25-cv-00526-RLP<br><br>ORDER DENYING MOTION TO DISMISS |

Before the Court is Defendant Ulta Salon Cosmetics and Fragrance, Inc.'s

Motion to Dismiss. ECF No. 19. Plaintiffs filed a putative class action Complaint

against Ulta Salon Cosmetics and Fragrance, Inc., for false and misleading email

ORDER DENYING MOTION TO DISMISS ~ 1

marketing. As set forth below, Ulta's Motion to Dismiss is denied. The Complaint plausibly pleads the CPA and CEMA claims with sufficient specificity; CEMA is not preempted by federal law; and CEMA does not violate the dormant Commerce Clause.

BACKGROUND

Plaintiffs Veronica Repperger, Amber Lamar, Charra Caldwell, and Rebekah Clark filed a putative class action lawsuit against Ulta Salon Cosmetics and Fragrance, Inc., in Island County Superior Court alleging violations of the Washington Commercial Electronic Mail Act (CEMA) and the Washington Consumer Protection Act (CPA). ECF No. 1-1. Defendants removed the case to the Eastern District of Washington. ECF No. 1.

The Complaint alleges Ulta sends two types of emails to Washington consumers which contain false or misleading information in the subject lines. First, Ulta sends emails with subject lines falsely representing offers as "free gifts" without disclosing required conditions, such as minimum purchase amounts. Second, Ulta sends emails with subject lines falsely representing unqualified discounts on purchases without disclosing material exclusions. ECF No. 1-1, ¶¶ 1-10. Plaintiffs allege the free gift emails and percentage discount emails violate the Washington Commercial Electronic Mail Act (CEMA), and the Washington Consumer Protection Act. *Id.*, ¶ 11.

ORDER DENYING MOTION TO DISMISS ~ 2

Ulta filed a Motion to Dismiss and a Notice of Constitutional Challenge. ECF No. 19, 20. Based on the stipulation of the parties, the Court granted the State of Washington's motion to intervene in the case. ECF No. 26. The matter is fully briefed and was considered without oral argument.

ANALYSIS

*1.    Sufficiency of the Pleading Under Rule 8*

Ulta contends Plaintiffs have not met the requirements of Fed. R. Civ. P. 8(a)(2) by failing to adequately set forth the elements of their claims. Rule 8(a) requires a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (ellipsis in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In short, a complaint must "fully set[ ] forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).

Ulta contends Plaintiffs' Complaint contains sparse allegations about their own experiences and does not sufficiently connect the alleged conduct to the Plaintiffs' individual experiences. The Court disagrees. The Complaint alleges the named Plaintiffs, along with purported class members, received specific emails between January 8, 2022 and July 25, 2025 which contained false or misleading

ORDER DENYING MOTION TO DISMISS ~ 3

subject lines by implying either: (1) a free gift would be provided unconditionally and at no cost to the recipient when in fact a there is a dollar purchase requirement revealed in the body of the email; or (2) a straightforward discount would be applied to the recipient's purchase, when in fact major exclusions are revealed in the body of the email. ECF No. 1-1, ¶¶ 36-71. The Complaint sufficiently alleges specific facts: the date and content of the subject emails, that each Plaintiff received them, and the allegedly misleading nature of the subject lines. This is sufficient to put Defendant on notice of the facts upon which the claim is based and to withstand a challenge under Rule 8.

*2.    Failure to State a Claim Under Rule 12(b)(6)*

Rule 12(b)(6) allows a party to move for dismissal if the plaintiff fails to state a claim upon which relief can be granted. FRCP 12(b)(6). The standard for dismissal under this rule is exacting. When considering a 12(b)(6) motion, the Court accepts the allegations in the complaint as true and construes the pleading in the light most favorable to the party opposing the motion. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A defendant's request for relief under 12(b)(6) will be granted only if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

ORDER DENYING MOTION TO DISMISS ~ 4

### a. CEMA Claim

Ulta contends Plaintiffs did not sufficiently plead the elements of their CEMA claim. CEMA provides:

> (1) No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that . . .
> (b) Contains false or misleading information in the subject line.

RCW 19.190.020(1). Thus, CEMA requires Plaintiffs to plausibly allege Ulta (1) initiated a commercial e-mail; (2) with a false or misleading subject line; (3) to an address the sender knew or had reason to know was held by a Washington resident. RCW 19.190.020(1)(b). There is no dispute Ulta initiated commercial e-mails. The remaining elements are considered in turn.

### i. Knowledge of Residency

Ulta contends the Complaint only hypothesizes about how Ulta potentially knows a customer is Washington resident. "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555 (2007), and a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

The Complaint alleges Ulta knew or had reason to know their commercial emails were sent to Washington residents because: (1) Defendant had a physical

ORDER DENYING MOTION TO DISMISS ~ 5

Washington residence associated with the recipient; (2) Defendant had access to data indicating the recipient was located in Washington state; or (3) information was available to the Defendant upon request from the registrant of the internet domain name contained in the recipient's electronic email address.[1] ECF No. 1-1, ¶ 72.

The Complaint further alleges Ulta could know or have reason to know Plaintiffs and potential class members are Washington residents by the following methods: (1) for any person placing an order from Defendant online, Defendant has the email and shipping address for the order; (2) Defendant encourages online shoppers to create accounts where they save their email addresses, shipping addresses, billing addresses, and phone numbers; (3) Defendant offers consumer credit cards and those customers who apply for such cards must provide information including a billing address to Defendant; (4) Defendant tracks the effectiveness of its marketing emails in part by identifying customers who click on

---

[1] CEMA provides: "For purposes of this section, a person knows that the intended recipient of a commercial electronic mail message is a Washington resident if that information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 10.190.020(2).

ORDER DENYING MOTION TO DISMISS ~ 6

links in such emails, including identifying their physical location; (5) Defendant utilizes online tracking technologies to identify and locate consumers who click on links contained in marketing emails or visit its website; (6) Defendant employs third parties to create profiles of customers and potential customers, including their email addresses and physical locations; and (7) Defendant knew, should have known, or had reason to know it sends marketing emails to Washington residents due to its presence in the state and the volume of marketing emails it sends to people around the country. ECF No. 1-1, ¶¶ 73-80. These potential methods of obtaining residence information sufficiently support the claim Ulta has "reason to know" the residency of the recipients of its marketing e-mails. RCW 19.190.020(1).

### ii. False or Misleading Subject Lines

Ulta contends the Complaint fails to sufficiently allege Ulta's email subject lines were false or misleading. Ulta argues Plaintiffs have not alleged that Ulta failed to honor any advertised offer or that any named Plaintiff or putative class member was denied a gift or percentage discount upon satisfying the disclosed conditions. For purposes of this motion, the Court accepts as true the "free gift" and "percentage discount" email subject lines identified by Plaintiffs are false or misleading as alleged based on the limitations and restrictions contained in the bodies of the emails. Ulta's argument fails because CEMA does not require a

ORDER DENYING MOTION TO DISMISS ~ 7

showing that the Plaintiff was induced to make a purchase by or detrimentally relied upon the email subject line in order to establish a false or misleading subject line. The Complaint alleges sufficient facts setting forth the elements of a CEMA claim to withstand the Motion to Dismiss.

### b. Consumer Protection Act Claim

Ulta contends Plaintiffs' CPA claim must be dismissed because the Complaint does not allege the elements required for a CPA claim. This argument fails as a matter of law. By statute, a violation of CEMA is a violation of the CPA. RCW 19.190.030; *see Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1003 (W.D. Wash. 2019); *State v. Heckel*, 143 Wash. 2d 824, 828 (2001). Furthermore, while the CPA requires a showing of damages, the Washington Supreme Court has recognized an email received in violation of CEMA constitutes an injury. *Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 592 (2025) ("the injury is receiving the e-mail that violates CEMA").

### 3.    CAN-SPAM PREEMPTION

Ulta contends Plaintiffs' CEMA claim fails because it is expressly preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM). 15 U.S.C. §§ 7701-13. A number of courts have considered and rejected this argument. *See e.g.*, *Agnew v. Macy's Retail Holdings, LLC*, 2026 WL 764140 (W.D. Wash. March 18, 2026); *Kempf v. Fullbeauty*

ORDER DENYING MOTION TO DISMISS ~ 8

*Brands Operations, LLC*, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026); *Ma v. Nike, Inc.*, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026); *Harrington v. Vineyard Vines, LLC*, 813 F. Supp. 3d 1218 (W.D. Wash. Dec. 18, 2025); *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040, 1045-46 (E.D. Wash. 2005). The Court agrees with these decisions.

Congress enacted CAN-SPAM in 2003 to "curb the negative consequences of spam and spamming practices without stifling legitimate commerce." *Gordon*, 375 F. Supp. 2d at 1045. CAN-SPAM expressly allows States to prohibit by "statute, regulation, or rule" either "falsity or deception" in "any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). CEMA's subject-line provision, RCW 19.190.020(1)(b), falls within this exception: it imposes liability for sending a commercial e-mail that "[c]ontains false or misleading information in the subject line" to Washington residents. *Id.* Because CEMA's subject-line provision applies only to false or misleading information, it is not preempted by CAN-SPAM. *See Gordon*, 375 F. Supp. 2d at 1045-46; *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at *9 (W.D. Wash. Aug. 5, 2008), *aff'd,* 348 F. App'x 255 (9th Cir. 2009) (noting "claims actually alleging falsity or deception under CEMA would not be preempted").

Ulta argues the "falsity or deception" exception to CAN-SPAM refers to "traditionally tortious or wrongful conduct," citing *Gordon v. Virtumundo, Inc.*,

ORDER DENYING MOTION TO DISMISS ~ 9

575 F.3d 1040, 1062 (9th Cir. 2009). Ulta argues Plaintiffs must therefore plead the essential elements of fraud or deceit to complete its CEMA claim: material misrepresentation, reliance, actual injury, or deceptive intent, and Plaintiffs have not met the heightened particularity requirements for claims alleging fraud or misrepresentation under Rule 9(b). Ulta's argument fails because CEMA does not "sound in fraud." *Gordon*, 375 F. Supp. 2d 1048. Furthermore, Congress opted not to use the word "fraud" in crafting the CAN-SPAM exception. The use of the words "falsity or deception" indicates Congress intended the CAN-SPAM exception to apply more broadly than claims of fraud. *See Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 942 (N.D. Cal. 2009).

Ulta also argues conflict preemption bars Plaintiffs' CEMA claim. The Court disagrees. There is no obstacle to businesses complying with both CAN-SPAM and CEMA. Furthermore, because CAN-SPAM specifically allows for state regulation of false or deceptive e-mails, Plaintiffs' CEMA claim does not undermine Congress's intent in enacting CAN-SPAM.

*4.    CONSTITUTIONALITY*

Ulta contends CEMA is facially invalid because it violated the dormant Commerce Clause by controlling commerce beyond Washington and by burdening interstate commerce. The dormant Commerce Clause has three "key strands," *Flynt v. Bonta*, 131 F.4th 918, 923 (9th Cir. 2025), which involve (i) a non-

ORDER DENYING MOTION TO DISMISS ~ 10

discrimination principle, (ii) an "extraterritoriality" principle, and (iii) a burden balancing test under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844 (1970). The Washington Supreme Court has already held CEMA does not violate the dormant Commerce Clause. *Heckel*, 143 Wash. 2d at 839 ("In sum, we reject the trial court's conclusion that the Act violates the dormant Commerce Clause."). There have been no cases or changes of law since *Heckel* which suggests a different result. *See Kempf*, 2026 WL 395677, at *5-6. Furthermore, the United State Supreme Court has rejected similar arguments regarding a per se violation of the dormant Commerce Clause. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374, 143 S.Ct. 1142 (2023). Nonetheless, the Court considers Ulta's arguments in turn.

### a. Non-Discrimination

Ulta first argues CEMA discriminates by providing differential treatment of in-state and out-of-state economic interests, benefiting the in-state interests and burdening the out-of-state interests. According to Ulta, CEMA's resident-triggered liability forces out-of-state competitors to build out Washington-specific segmentation for interstate e-mail campaigns, while retailers operating exclusively in Washington can adopt CEMA as a default rule to avoid retooling costs. Ulta calls this "disparate treatment." ECF No. 19 at 21. Yet, implicit in the argument is that in-state and out-of-state retailers must all comply with CEMA when e-mailing

ORDER DENYING MOTION TO DISMISS ~ 11

Washington residents. *See Heckel*, 143 Wash. 2d at 833 ("The Act applies evenhandedly to in-state and out-of-state spammers"); *Kempf*, 2026 WL 395677, at *6 ("Regardless of where the sender is located . . . the sender faces potential liability). Further, in expressly giving the states the right to regulate false and misleading e-mail transmissions, Congress was apparently satisfied state legislation would not impose an undue burden on interstate commerce. This argument is not persuasive.

### b. Extraterritoriality

Next, Ulta argues CEMA improperly controls commerce occurring wholly outside of Washington in violation of the extraterritoriality principle. Ulta points out an email generated at its headquarters in Illinois could be transmitted to a Washington resident away at college in another state, subjecting it to liability under CEMA for a transmission entirely outside of Washington. According to Ulta, this demonstrates CEMA is not based on a neutral in-state standard and constitutes regulation of out-of-state marketing in violation of the dormant Commerce Clause, with Washington's rules effectively exported into every other state. This position ignores that Washington residents remain Washington residents even if they are temporarily out of state, and CEMA only regulates activities targeting Washington residents.

ORDER DENYING MOTION TO DISMISS ~ 12

As the U.S. Supreme Court acknowledged, "[i]n our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior." *Nat'l Pork Producers*, 598 U.S. at 374. A rule against such laws would "cast a shadow over laws long understood to represent valid exercises of the States' constitutionally reserved powers" and would "invite endless litigation and inconsistent results." *Id.* at 375.

### c. *Pike Burden Analysis*

Third, Ulta contends CEMA violates the dormant Commerce Clause because it creates a lack of national uniformity which impedes the flow of interstate goods. Under the *Pike* balancing analysis, "[s]tate laws that regulate even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *See Flynt*, 131 F.4th at 925 (internal quotations and citations omitted). However, a plaintiff must first "demonstrate that a challenged law imposes a 'substantial' or 'significant' burden on interstate commerce before *Pike* balancing can occur." *Id.* The only burden identified by Ulta is the increased cost of ensuring its emails to Washington residents comply with CEMA. However, increased costs to comply with state regulation alone does not suffice to establish a substantial burden on interstate commerce. *Nat'l Pork Producers*, 6 F.4th at 1032; *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1241-42 (9th Cir. 2021). Because Ulta has

ORDER DENYING MOTION TO DISMISS ~ 13

identified no substantial or significant burden on interstate commerce under CEMA; the Court need not weigh the local public interests against the burden imposed on commerce.

Accordingly, **IT IS ORDERED**:

1.    Ulta's Motion to Dismiss, **ECF No. 19**, is **DENIED**. The Complaint meets plausibility and specificity requirements. CEMA is not preempted by CAN-SPAM and does not violate the dormant Commerce Clause.

2.    The Court will issue a notice setting a scheduling conference by separate filing.

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order and provide copies to counsel.

DATED April 28, 2026.

REBECCA L. PENNELL
UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION TO DISMISS ~ 14